UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUGH A. SANDERS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 12-cv-06068 BHS

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: February 7, 2014

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976) (ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 19, 21, 24).

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly the medical evidence provided by plaintiff's examining psychologist.

The ALJ provided his own interpretation of the medical evidence, and failed to explain adequately why his interpretation of the psychologist's examination results were more correct than the opinions of the psychologist who performed the examination. Similarly, the other reasons provided by the ALJ for his failure to credit fully the psychologist's opinion also were not based on substantial evidence in the record.

Therefore, this matter should be reversed and remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, HUGH ANDREW SANDERS, was born in 1968 and was 41 years old on the amended alleged date of disability onset of June 1, 2009 (*see* Tr. 48, 173). Plaintiff obtained his GED at age 15 while in a group home (Tr. 50) and has taken some college courses (Tr. 51). Plaintiff has past relevant work as a cook helper *(see* Tr. 34).

Plaintiff has at least the severe impairments of "obesity; hernia; substance abuse; antisocial personality disorder; [and] psychosis NOS, r/o mood disorder NOS (20 CFR 404.1520(c) and 416.920(c))" (Tr. 27).

At the time of the hearing, plaintiff was staying with his mother, but often travels by bus or gets rides to stay with friends (Tr. 51-52, 56-57).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 172-89). The applications were denied initially and following reconsideration (Tr. 84-101). Plaintiff's

requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on August 16, 2011 (*see* Tr. 42-83). On October 21, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 22-41).

On November 30, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-7). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in December, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on March 4, 2013 (*see* ECF Nos. 11, 12).

The issues presented by plaintiff include:

> (1) Did the administrative law judge (ALJ) properly consider plaintiff's substance abuse in finding him not disabled?
>
> (2) Did the ALJ properly evaluate the medical evidence of record?
>
> (3) Did the ALJ properly find that Plaintiff's allegations regarding his symptoms and limitations were not entirely credible, especially when consideration is give to the new evidence?
>
> (4) Did any of the alleged errors result in a failure by the ALJ to determine properly plaintiff's residual functional capacity and formulate an accurate vocational hypothetical question?

(S*ee* ECF No. 19).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

1. **Did the ALJ properly evaluate the medical evidence of record**?

Among other things, plaintiff contends that the ALJ failed to evaluate properly the medical evidence and the opinion of examining psychologist Dr. Tasmyn Bowes, Psy. D. (*see* Opening Brief, ECF No. 19, pp. 11-14). Defense argues that all of the reasons

provided by the ALJ to discredit Dr. Bowes' opinion were proper and that the "ALJ properly evaluated Dr. Bowes's opinion" (*see* Response Brief, ECF No. 21, p. 20; *see also*, pp. 18-20).

Even if an examining psychologist's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Although an ALJ may accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," the ALJ must explain adequately why his own interpretations, rather than those of the doctor, are correct. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

a. Dr. Tasmyn Bowes, Psy.D., examining psychologist

Dr. Bowes examined and evaluated plaintiff on January 4, 2010 at the request of the Department of Social and Health Services (*see* Tr. 340). She also reviewed the psychological evaluation completed by Dr. Dan Neims, Ph.D. dated May 15, 2009, and took a detailed history from plaintiff (*see* Tr. 341-43). For example, she noted that plaintiff's chief complaint was: "I can't hold a job – I've smacked around my last few employers –Knocked my last boss off a ladder – I get really angry – screaming and hollering especially with authority" (Tr. 341). Dr. Bowes noted plaintiff's description of his manic episodes, where he 'will play [his] guitar for 24 hours straight with no breaks"

(*id.*). Although most of the time, according to plaintiff, he had too much energy, when he gets depressed, he described "that's when I go to my moms' and she takes care of me" (*id.*).

Dr. Bowes included a detailed assessment of plaintiff's history with alcohol and other substances (*see* Tr. 342). For example, she noted his early history with hallucinogens; and the fact that since then, plaintiff "has used methamphetamine on and off" (Tr. 342). She noted that he "described his most significant use of methamphetamine as occurring for a few days at a time in 1998, 2007, and December of 2009" (Tr. 342). As Dr. Bowes evaluated plaintiff on January 4, 2010, she was well aware of the fact that plaintiff was using significant amounts of methamphetamine within a month of her evaluation (*see id.*). She also noted plaintiff's "long history of using marijuana a few times a week," and that he "described drinking alcohol 2-3 times a week, 'Just so that [he] c[ould] sleep" (*id.*). Dr. Bowes even noted plaintiff's "'three cigarettes a day'" and his approximate "'three cups of coffee most days'" (*id.*).

The Court notes that the ALJ appears not to have read this aspect of Dr. Bowes' opinion because the ALJ failed to credit fully Dr. Bowes opinion in part with a finding that Dr. Bowes "failed to consider the claimant's substance abuse in her function statement" (Tr. 33 (*citing* Tr. 344-46)). However, in addition to the detailed description of plaintiff's history with substances, as already described, Dr. Bowes, on one of the pages relied on by the ALJ for his finding that Dr. Bowes failed to consider substance abuse, indicated her diagnoses of Alcohol Abuse; Methamphetamine Abuse; and Cannabis Abuse (*see* Tr. 345).

Also, when Dr. Bowes discussed plaintiff's functional limitations, they were prefaced with the statement that he "appears to suffer from Bipolar 1 Disorder" (Tr. 345). She then goes on to discuss the functional limitations this has on his ability to function and hold on to a job (*id.*). Her prognosis ends with her indication that he was encouraged to seek out treatment for his "severe level of Bipolar disorder he has struggled with over the course of his adult life, [as] Without treatment [plaintiff] is at risk of engaging in behavior that puts his own well being and the well being of the people around him in jeopardy" (Tr. 346). The only logical conclusion to be drawn from her report is that she is attributing these functional limitations to plaintiff's Bipolar 1 Disorder, as opposed to his substance abuse problems (*see id.*). Therefore, the ALJ's finding that Dr. Bowes "failed to consider the claimant's substance abuse in her function statement" is a finding without substantial support in the record (Tr. 33 (*citing* Tr. 344-46)). This finding by the ALJ provides no support for the ALJ's failure to credit fully the opinion of Dr. Bowes.

Although defendant argues that Dr. Bowes' opinion was discredited properly by the ALJ because "Dr. Bowes' opinion about Plaintiff's ability to function did not identify whether a limitation she assessed was the result of bipolar disorder, substance abuse, or both" (Response, ECF No. 21, p. 19), this argument is curious given defendant's earlier argument that the "materiality of DAA [drug addiction and/or alcoholism] [] only becomes an issue if there is an initial finding that Plaintiff is disabled considering all of his impairments, including those caused by DAA" (*see id.*, p. 4). As the ALJ never made a finding that plaintiff is disabled considering all of his impairments, whether or not Dr. Bowes differentiated her assessments of functional limitations on the basis of drug

addiction and/or alcoholism is not a proper basis to discredit her opinion at that stage of the sequential disability evaluation.

When discussing plaintiff's activities of daily living ["ADLS"], Dr. Bowes noted that plaintiff had not "had 'a place of [his] own'" and "was unable to provide very much information regarding his ability to do house hold chores and follow through with ADLS" (Tr. 344). She opined that plaintiff "is likely able to perform these tasks but would likely find it difficult to organize and plan and would likely get things done in a scattered disorganized fashion due to difficulty concentrating" (*id.*).

When conducting her mental status examination, ("MSE"), Dr. Bowes noted that plaintiff "maintained somewhat fleeting eye contact" and "demonstrated no signs of being under the influence of alcohol or other substances" (*id.*). She also noted that plaintiff "talked fast and long," and that his speech was well maintained [] but not well organized" (*id.*). She observed that plaintiff "easily veered from the topic and had to be redirected to the question that had been posed to him" (*id.*). Dr. Bowes observed that plaintiff's affect was labile; his motor activity was agitated; he was fidgety; and he had difficulty sitting in his chair throughout the interview.

Regarding plaintiff's cognitive testing, Dr. Bowes assessed that his long-term memory was "within adequate range," while his fund of knowledge and his ability to abstract were in the average range (*id.*). She also opined that his ability for arithmetic calculation was in the "moderate-complex task range" (*id.*).

In addition to the substance/alcohol-related diagnoses discussed already, Dr. Bowes also diagnosed plaintiff with "Bipolar I Disorder. Most recent episode manic,

severe with psychotic features," and a rule-out diagnosis of Antisocial Personality Disorder (Tr. 345). Dr. Bowes indicated her ultimate discussion/medical source statement as follows:

> In a work setting, Mr. Sanders is likely to become significantly overwhelmed and anxious by the demands and expectations that he function efficiently and with sufficient speed. His speed of acquisition of information from memory and use of that information to guide task completion is likely to be severely impaired. He is likely to be at risk of lashing out in verbally/physically aggressive acts in response to the level of general irritability/agitation that he experiences. Mr. Sanders' mental ability to relate to others, including fellow workers and supervisors, is likely severely limited. His ability to understand, remember, and follow instructions is likely unreliable. He appears to have a higher than average IQ but is prone to engaging in impulsive behavior/decision making that impacts his ability to function and has caused great harm in his life and the lives of others.
>
> He demonstrated no comprehension or significant memory difficulties during the psychological evaluation. Mr. Sanders' mental ability to withstand the pressures and stress associated with day-to-day work activity appears in significantly limited at this time from a mental health perspective.

(Tr. 345-46).

As already discussed, the ALJ failed to credit Dr. Bowes opinion in part due to the ALJ's erroneous finding that she had not considered plaintiff's "substance abuse in her function statement" (*see* Tr. 33; *see also, supra*). He also failed to credit her opinion fully because he found that her conclusion that plaintiff's ability to follow instructions is "likely unreliable" was "somewhat vague" (*see* Tr. 33). However, Dr. Bowes' opinion that plaintiff's ability to "follow instructions is likely unreliable" is not vague at all, but indicates that, more likely than not, plaintiff's ability to follow instructions is unreliable (*see* Tr. 345-46). The ALJ's finding that Dr. Bowes' opinion was vague is not supported

by substantial evidence in the record, and his failure to credit her opinion on this basis does not constitute a specific and legitimate reason to fail to credit fully her opinions.

Finally, the ALJ provides his last reason for failing to credit fully Dr. Bowes' opinions: the ALJ found that "Dr. Bowes' opinion is not entirely consistent with her findings" (Tr. 33). In support of this finding, the ALJ lists some of plaintiff's intact cognitive results (*see id.*). However, it is clear that Dr. Bowes did not assess plaintiff with functional limitations due to his intellectual ability: She opined that he had "a higher than average IQ but is prone to engaging in impulsive behavior/decision making that impacts his ability to function and has caused great harm in his life and the lives of others" (Tr. 346). Therefore, the ALJ's recitation of facts demonstrating that plaintiff could perform mathematical problems, serial sevens, and "demonstrated no comprehension or significant memory difficulties during the evaluation" does not constitute a legitimate basis to discount Dr. Bowes' opinion that despite his high IQ, plaintiff suffered from impulsive behavior and decision making that would impact his ability to function in a work environment (*see id.*).

In addition, the ALJ notes that plaintiff had "well-maintained speech," but without explanation left out the second half of that observation (*see* Tr. 33). The ALJ's finding that plaintiff had "well-maintained speech" is misleading, given that Dr. Bowes' observation actually was: "Speech was well maintained [] but not well organized" (Tr. 344). The ALJ did not explain why he found it to be relevant that plaintiff's speech was well maintained, but found it not worth mentioning the

limitation Dr. Bowes observed about plaintiff's well maintained speech in that it was not well organized.

Based on the relevant record, the Court concludes that the ALJ's finding that Dr. Bowes' opinion was not consistent is not supported by substantial evidence in the record as a whole.

Defendant, in defense of the ALJ's finding of an inconsistency, argues that "Dr. Bowes found that Plaintiff was cooperative, his affect was labile, and his speech was well-maintained, but she nevertheless assessed severe social limitations due to Plaintiff's 'impulsive behavior/decision making' and 'general irritability/agitation'" (Response, ECF No. 21, p. 18-19 (*citing* Tr. 33, 344-46)). First, the Court notes that an examining psychologist is best in a position to assess clinical observations about a claimant's affect and behavior, and to determine the likely results, clinically, of the observations, having years of education and training in such endeavors: "Experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware

that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

Second, regarding defendant's defense of the ALJ's finding of an inconsistency, defendant appears to imply that a labile affect is a normal psychological result (Response, ECF No. 21, p. 18-19 (*citing* Tr. 33, 344-46)). *See also, e.g.*, Andrew Merwook, M. Sc, Wai Chen, MRC Psych, Ph.D., Fruhling Rijskijk, Ph.D, et al., Genetic Associations Between the Symptoms of Attention-Deficit/Hyperactivity Disorder and Emotional Lability in Child and Adolescent Twins, J. Amer. Acad. Child & Adolescent Psychiatry, published online November 27, 2013, Abstract available at http://www.jaacap.com/article/S0890-8567(13)00815-0/abstract, last visited January 11, 2014 ("Emotional lability is recognized as an associated feature of attention-deficit/hyperactivity disorder (ADHD)"). Defendant, like the ALJ, provides a different interpretation of the objective medical evidence than does the examining psychologist who is trained to observe such things as a labile affect; who is trained to identify this particular objective observation as potentially indicative of mental illness; and, who is trained to incorporate such observations into an assessment.

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a

psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Simply misinterpreting, or reinterpreting, the objective medical evidence with a finding of an inconsistency, when one does not exist, is not a proper basis for an ALJ to reject the opinion of an examining doctor. *See Nguyen v. Chatter*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the ALJ provided an alternative explanation for the objective medical evidence over the opinion of the trained psychologist; however, he did not adequately explain why his reasons were more correct than the assessment of the trained psychologist.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ's findings with respect to the opinion of Dr. Bowes are not supported by substantial evidence in the record as a whole, and also concludes that the ALJ failed to provide specific and legitimate reasons for failing to credit fully her opinions.

Also, the Court concludes that this error is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Dr. Bowes opined that plaintiff likely suffered from severe impairment in his "speed of acquisition of information from memory and use of that information to guide task completion;" severe limitation in his "mental ability to relate to others, including fellow workers and supervisors;" an unreliable ability to "understand, remember, and follow instructions;" was "at risk of lashing out in verbally/physically aggressive acts in response to the level of general irritability/agitation that he experiences;" and was

"prone to engaging in impulsive behavior/decision making that impacts his ability to function" (*see* Tr. 345-46). Had the ALJ credited fully these opinions, the functional determination regarding plaintiff's residual functional capacity would have been more restrictive, and would hence have affected the ultimate determination regarding the disability status of plaintiff.

Therefore, the error is not harmless, and the ALJ's decision is not supported by substantial evidence.

> 2. **Did the administrative law judge (ALJ) properly consider Plaintiff's substance abuse in finding him not disabled; (3) Did the ALJ properly find that Plaintiff's allegations regarding his symptoms and limitations were not entirely credible, especially when consideration is give to the new evidence; and (4) Did any of the alleged errors result in a failure by the ALJ to determine properly plaintiff's residual functional capacity and formulate an accurate vocational hypothetical question**?

Because the Court already has concluded that the ALJ failed to evaluate properly the medical evidence, the remaining contentions by plaintiff do not need to be addressed herein, *see supra*, section 1. The medical evidence will need to be evaluated anew, including the evidence of plaintiff's substance abuse. In addition, as a determination of a claimant's credibility relies in part on the assessment of the medical evidence, plaintiff's credibility necessarily must be evaluated anew. *See* 20 C.F.R. § 404.1529(c). Similarly, plaintiff's RFC and the remainder of the sequential disability evaluation process must be evaluated anew, as necessary.

//

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 16

**5. Whether this matter should be reversed and remanded for further consideration or for an immediate payment of benefits**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Although the ALJ failed to evaluate the medical evidence properly, the medical evidence nevertheless contains differing opinions regarding plaintiff's ability to perform work activity. In addition, new evidence is in the record that the ALJ did not have the opportunity to evaluate. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

## CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 7, 2014, as noted in the caption.

Dated this 14th day of January, 2014.

J. Richard Creatura
United States Magistrate Judge